UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CANDRA WINSTON,                                    **AMENDED**
                                                  **COMPLAINT**
                                                  **WITH JURY DEMAND**

                         Plaintiff,                    12 Civ. 0395
(FB)(VVP)
            -against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT,INSPECTOR BRYAN, CAPTAIN
MICHAEL VANCHIERI,LT. GORDON HUGHES,
LT.NICHOLAS FERRARO,individually
and in their Official capacities,

                         Defendants.
----------------------------------------X

        Plaintiff, CANDRA WINSTON ("WINSTON"), by and through

her attorneys, the law firm of CRONIN & BYCZEK, LLP, as and

for her Complaint against Defendants, respectfully set

forth the following:

                        **NATURE OF ACTION**

        1.   This action is hereby commenced for the purpose

of seeking to secure protection of, and to redress the

deprivation of, rights secured by the United States

Constitution, Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. ' 1981, 42 U.S.C. ' 1983, 42 U.S.C. '

1985, New York State Executive Law ' 296, and New York City

Human Rights Law ' 8-107 et. seq., providing for relief

based upon Defendants' unlawful employment practices of

engaging in discrimination based upon Plaintiff's race,

gender, subjecting plaintiff to a hostile work environment and retaliation against Plaintiff for engaging in the protected activity of formally complaining of said discrimination.

**JURISDICTION**

2. The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. '' 1343(3) and (4), 28 U.S.C. ' 1331, as well as 42 U.S.C. ' 2000e through ' 2000e (15).

3. This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. ' 1367.

4. Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5. The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment freedom of speech and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against race, gender, subjecting plaintiff to a hostile work environment race retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. ' 1981, 42 U.S.C. ' 1983, 42 U.S.C. ' 1985, along with applicable

2

provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6. On or about May 19, 2010 Plaintiff, CANDRA WINSTON, in accordance with applicable law, filed a Verified Complaint with the United States Equal Employment Opportunity Commission ("EEOC"), which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

7. Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices based upon race, gender, subjecting plaintiff to a hostile work environment and in retaliation for engaging in protected activity.

8. On October 26, 2011 the EEOC issued "Right to Sue" Letter advising Plaintiff of the completion of her prerequisites to file suit in federal court. Plaintiff, received said Right to Sue@ Letters on October 31, 2011.

## VENUE

9. Venue is proper within the Southern District of this Court, City of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of the County of New York, State of New York,

3

and the instant causes of action are based upon violations of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

**PARTIES**

10.    Plaintiff WINSTON is a African American female citizen of the United States and a resident of Suffolk County, State of New York. She has registered her opposition to the discriminatory practices of Defendants and thus is a member of a protected class. At all times relevant to this action, Plaintiff WINSTON was, and still is, a uniformed member of the New York City Police Department since June 1992. She was made a detective in April 1998 and in December 2006 she was promoted to Sergeant.

11.    Defendant CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the CITY and State of New York.  Defendant CITY is authorized by law to maintain a police department  that acts as its agent and for which it is ultimately responsible.

12.    Defendant NEW YORK CITY POLICE DEPARTMENT ("NYPD")  , operates under the direct authority of NYC and is the official New York City agency charged with law enforcement and investigative duties through New York City,

4

maintains control offices at 1 Police Plaza, New York, New York, along with satellite offices and precincts throughout the City and County of New York within the Eastern District of New York.

13.   Defendant LT. ANTHONY KOTARSKI, Caucasian, Male ("Kotarski")is and was employed by the NYPD and was plaintiff's supervisor during the relevant time period. He is sued in his individual and in his official capacity.

14.   Defendant Lt. GORDON HUGHES ("Hughes"), Caucasian, Male is and was employed by the NYPD and was plaintiff's supervisor during the relevant time period. He is sued in his individual and in his official capacity.

15.   Defendant CAPTAIN MICHAEL VANCHIERI ("Vanchieri") Caucasian, Male is and was employed by the NYPD and was plaintiff's supervisor during the relevant time period. He is sued in his individual and in his official capacity.

16.   Defendant LT. NICHOLAS FERRARO ("Ferraro") Caucasian, Male is and was employed by the NYPD and was plaintiff's supervisor during the relevant time period. He is sued in his individual and in his official capacity.

17.   Defendant INSP. BRYAN ("Bryan") Caucasian, Male is and was employed by the NYPD and was plaintiff's supervisor during the relevant time period. He is sued in his individual and in his official capacity.

## FACTS UNDERLYING PLAINTIFFS' CLAIMS

18.   Plaintiff WINSTON is currently employed as a Detective Sergeant in the NYPD. She has held the rank of Sergeant since December 22, 2006 and was appointed a Detective in April 1998.

19.   During the relevant time period she was assigned to Narcotics Borough Queens, from March 2008 to November 30, 2009.

20.   At Narcotics Borough Queens, during the relevant time period, there were 40 supervisors, only four of which, including plaintiff, were African American. Plaintiff was the only female of the 40 supervisors.

21.   Throughout plaintiff's assignment at Narcotics Borough Queens she was treated in a disparate manner because of her race and gender and subjected to a hostile work environment.

22.   Plaintiff was assigned as the immediate supervisor of the 106 Pet Module Team and defendant Kotarski was her immediate supervisor. She was the only African American  Female supervisor assigned to the team. Initially plaintiff and Kotarski had an agreement to share the responsibilities of taking the team out to do enforcement. However at every opportunity defendant Kotarksi would undermine plaintiff's authority and control

6

which had a negative impact on her ability to perform
enforcement duties, including but not limited to: Kotarksi,
without informing plaintiff, would grant team members days
off or assign them to other duties on the days plaintiff
was supervising the team, making it impossible for her to
perform enforcement functions; plaintiff would order team
members to perform certain tasks or assignments and
Kotarski would instruct them to disregard orders; Kotarski
withheld information from plaintiff which was necessary to
perform the essential duties and functions of her position.
Kotarski did not treat similarly situated male supervisors
in such manner.

23.  In April 2008 plaintiff requested and was
assigned to the Assistant Integrity Control Officer ("ICO")
position and also the Assistant Operations Coordinator
positions by Inspector Napolitano. In these positions
defendants continued to treat plaintiff in a disparate
manner based upon her race and gender, including but not
limited to: defendants Hughes and Vanchierei would
undermine plaintiff's authority by telling members of the
service, white males, that she supervised to disregard her
orders and requests and to just "clown" for her; defendant
Bryan undermined plaintiff's authority by informing her
that he was going to unsubstantiated two command

disciplines that she issued even though the investigations
of the officers, white males, showed they committed the
patrol guide violations and that they never denied
committing the violations; while performing her duties
plaintiff was attached by a white male detective, plaintiff
reported this officer to defendant Ferraro who did nothing
to protect plaintiff and violated the NYPD's patrol guide
by not reporting the incident; when plaintiff attempted to
discipline this same detective she was told that she had no
grounds to do so and the command discipline was removed;
when plaintiff informed defendant Vanchieri about the
discriminatory treatment she was being subjected to and
that her authority was being undermined as a result he told
her that it would be "treason" to go outside the command
with the issue; plaintiff instructed two white males that
they were in violation of a memo by the Commanding Officer
regarding enforcement attire and issued command disciplines
to them, which were later unsubstantiated by defendant
Bryan, shortly thereafter a white male DAT Lt ordered
plaintiff to issue a command discipline to a white male
detective for the same violation. The detectives then
complained to their supervisor another white male and they
were eventually informed to disregard plaintiff's
instructions to dress; even though plaintiff was assigned

8

as the Assistant Operations Coordinator, the Operations
Coordinator, a white male, did not communicate with her and
would appoint a white male sergeant to act as Operations
Coordinator in his absence, even though that duty was
assigned to plaintiff.

24.   Defendants gave preferential treatment to a white
male detective, Detective Robert Felipe, who made it quite
clear that he was not going to take orders from a female
supervisor. Defendants routinely permitted this detective
to engage in disruptive conduct for the purpose of
undermining her authority and permitting him to make
baseless and meritless complaints against plaintiff.
Detective Felipe routinely disobeyed orders from plaintiff,
including an incident in which he left early without
permission, plaintiff told him to report to her the next
time he came in, plaintiff was then told by Captain
Vanchieri that the detective did not have to speak to her
about his unauthorized early leave. This undermined her
authority. Plaintiff then told Inspector Natoli who
informed plaintiff that he told Captain Vanchieri words to
effect that she had a right to supervise her subordinates.
Plaintiff also tried to give a white male, Detective Frank
Blier, a command discipline and Captain Vanchieri refused
to allow her to do so. Upon information and belief this was

9

the first time he refused to allow a supervisor to issue a command discipline, and the only time a black female supervisor under his command intended to issue a command discipline to a white male.

25.  Defendants engaged in disparate treatment of plaintiff by repeatedly instructing plaintiff that if she had any difficulties or problems with the other members of the service in the command, who were all male and overwhelmingly Caucasian she was not to discipline the officers or make any complaints. However, when a similarly situated white male supervisor had a problem with another white male detective, the detective's assignment was changed to avoid conflict and protect the white male supervisor.

26.  Defendants retaliated against plaintiff for engaging in protected activity when she processed an OEEO complaint for a female cleaner in the building in regards to garbage being placed in front of her door. Plaintiff was told by her supervisor that these things get handled in house. And shortly thereafter while plaintiff was on vacation, several officers similarly situated to plaintiff were questioned about her performance and then upon return from her vacation.

27.   Plaintiff was treated in a disparate manner from similarly situated white officers in that she was issued a command discipline, on or about November 6, 2009 for not giving her overtime to the ICO assistant who processed the overtime slips. Plaintiff and similarly situated white males were instructed to give their overtime slips to the ICO assistant and that was the custom and practice. Plaintiff was the only supervisor to receive a command discipline for this alleged violation. Plaintiff was the only member of the service in the entire unit to receive a command discipline for this alleged violation. Not one white male in the unit was ever disciplined for this reason.

28.   Defendants engaged in preferential treatment towards similarly situated white males when she was subjected to investigation, based on complaints of white male supervisors, that she exceeded the overtime limits. An investigation concluded that Plaintiff never exceeded the monthly overtime cap and all her overtime was properly approved by the very supervisors that permitted the complaints to proceed. But her overtime was reduced from 65 hours a month to 35 hours a month.

29.   In or about July 2009 plaintiff was denied promotion to ICO by defendant Bryan, allegedly because and

11

was being removed from her ICO position. Defendants did not have a legitimate non-discriminatory reason for denying the plaintiff the position.

30.   Defendants gave preferential treatment to a white male detective that plaintiff supervised who complained that she did too much overtime and to resolve the situation had plaintiff change her tour.

31.   In or about September 2009 defendants tried to get special assignment pay for a white male detective for his duties as ICO. Defendants never tried to get such assignment pay for plaintiff when she was assigned as ICO.

32.   When plaintiff informed and complained defendant Bryan of the discrimination and hostility in the command, he encouraged plaintiff to seek assignment elsewhere. Defendant Bryan violated NYPD's patrol guide by not reporting plaintiff's complaints, thus showing preferential treatment towards the white males that were the subject of plaintiff's complaints.

33.   Plaintiff's upwardly mobile career has been disrupted and negatively affected. In addition, she was involuntarily transferred to the Police Academy, where her overtime was further reduced to twenty hours a week.

## AS AND FOR A FIRST CLAIM PURSUANT TO 42 USC §1981
## AGAINST ALL DEFENDANTS

34.  Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-33 with the same force and effect as if fully set forth herein.

35. Throughout the events cited herein, the individual Defendants, while acting under the color of law, subjected Plaintiff to the deprivation of rights, privileges and immunities secured by the Constitution and laws of the United States, and specifically the equal protection and due process guarantees of the 14th Amendment of the Constitution, civil rights as guaranteed under Article I, Section II, of the New York State Constitution.

36.  Plaintiff has been deprived of her Constitutional rights to be free of discrimination based upon her race and retaliation and has been damaged in her employment and has suffered emotional distress and conscious pain and suffering as a result of these actions.

37.  The actions of Defendants, in depriving Plaintiff of her constitutional and civil rights, as herein before stated, were willful and malicious acts.

38.  As a result of the aforesaid wrongful, reckless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $5,000,000.00.

39. Based on the foregoing, Plaintiff is entitled to punitive and exemplary damages in the sum of $5,000,000.00.

**AS AND FOR A SECOND CLAIM PURSUANT TO 42 USC §1983
AGAINST ALL INDIVIDUAL DEFENDANTS**

40. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-39 with the same force and effect as is fully set forth herein.

41. The individual Defendants have embarked on a course of conduct that deprived Plaintiff of her rights under the United States Constitution, federal and state law.

42. The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

43. The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of her rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of her rights to due process and equal protection under the 14th Amendment based upon her race, gender and in retaliation.

44.   By these actions, Defendants have jointly and separately deprived Plaintiff of her rights under the 14th Amendment to the United States Constitution, in violation of 42 USC §1983.

45.   As a consequence of Defendants' unlawful actions, Plaintiff demand damages in the amount of $5,000,000.00.

## AS AND FOR A THIRD CLAIM IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AS AMENDED

46.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-45 with the same force and effect as is fully set forth herein.

47.   Based upon the aforementioned facts, Defendants discriminated against Plaintiff as a result of her race, gender and in retaliation for engaging in protected activity.

48.   Defendants intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated against and harassed in her employment on account of her race, gender and in retaliation for opposition to discrimination, thereby violating §704(A) OF Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2000e-3(a).

49.   No action was taken by Defendants or its agents to stop the harassment of Plaintiff, thereby contributing to a hostile working environment.

50.   As a result of the Defendants' conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, and extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and personally.

51.   As a result of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00.   Additionally, Plaintiff seeks punitive and exemplary damages in the sum of $5,000,000.00 against the individual Defendants.

## AS AND FOR A FOURTH CLAIM PURSUANT TO NEW YORK STATE EXECUTIVE LAW §296

52.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-51 with the same force and effect as if fully set forth herein.

53.   Based on the foregoing, Defendants intentionally and willfully discriminated against Plaintiff in her employment on account of race, gender and in opposition to discriminatory practices in violation of New York State Executive Law §296. Plaintiff has continuously been victimized by Defendants for their opposition to

discrimination and a hostile working environment created by Defendants.

54.  Even though Defendants were aware of Plaintiff's complaints and the existence of a hostile work environment, no actions were taken by Defendants in an effort to correct the discriminatory conduct on behalf of the individual Defendants.

55.  Such conduct on the part of Defendants and all others, without cause or justification, violated the Plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law § 296.

56.  As a result of Defendants' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

57.  As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $5,000,000.00. Additionally Plaintiffs seek punitive and exemplary damages in the amount of $5,000,000.00.

### AS AND FOR A FIFTH CLAIM PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE SECTION 8-107(1) et. seq.

58.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-57 with the same force and effect as is fully set forth herein.

59.   Defendants discriminatory conduct based on Plaintiff's race, gender as well as in retaliation for engaging in protected activity, constitutes discrimination in violation of the New York City Administrative Code § 8-107(1) et.seq. and the New York City Human Rights Law.

60.   The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of Defendants.

61.   Because of the foregoing, Plaintiff has been damaged in the amount of $5,000,000.00.  Additionally Plaintiff seeks punitive and exemplary damages in the amount of $5,000,000.00.

## JURY TRIAL

62.   Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief:

1.   Declare that the aforementioned actions of Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution

and New York City Human Rights Law and Administrative Code along with all applicable statutes; declare that the aforementioned discriminatory actions of Defendants were in violation of New York City Administrative Code SECTION 8-107(1) et. seq. New York State Executive Law § 296, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended;

2.    Enjoin the defendants and their successors, agents, servants, employees and those in active concert or participation with them from subjecting their employees to retaliatory and harassing conduct based on their race, gender and their engagement in the protected activity;

3.    As   and   for   Plaintiff's   First   Claim,   grant Plaintiff the sum of $5,000,000.00, along with punitive and exemplary damages in the amount of $5,000,000.00;

4.    As   and   for   Plaintiff's   Second   Claim,   grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

5.    As   and   for   Plaintiff's   Third   Claim,   grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

6.    As   and   for   Plaintiff's   Fourth   Claim,   grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

7.   As  and  for  Plaintiff's  Fifth  Claim,  grant Plaintiff the sum of $5,000,000.00 along with punitive and exemplary damages in the amount of $5,000,000.00;

8.   Grant  Plaintiff  all  costs  for  this  action, including reasonable attorney's fees; and

9.   Grant Plaintiff such other and further relief as this Court deems just.

Dated:    Lake Success, New York
          June 28, 2012

                              Yours etc,
                              Cronin & Byczek, LLP


                              _____
                              Susan P. Bernstein (SB6399)
                              Attorneys for Plaintiffs
                              1983 Marcus Ave, Suite C-120
                              Lake Success, New York 11042
                              (516) 358-1700