UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x **MEMORANDUM AND ORDER**

CANDRA WINSTON,   Case No. 12-CV-0395 (FB) (VVP)

                Plaintiff,

  -against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, INSPECTOR
BRYAN, CAPTAIN MICHAEL VANCHIERI,
LT. GORDON HUGHES, LT. NICHOLAS
FERRARO, individually and in their official
capacities,

                Defendants.
------------------------------------------------------------x

*Appearances:*

For the Plaintiff:
ILYA MORDUKHAEV, ESQ.
MARIAM AHMAD, ESQ.
CRONIN & BYCZEK, LLP
1983 Marcus Avenue, Suite C-120
New Hyde Park, NY 11042

*For the Defendants*:
MICHAEL A. CARDOZO
Corporation Counsel of the
City of New York
KATHRYN E. LEONE, ESQ.
ROBERT KATZ, ESQ.
Assistant Corporation Counsel
100 Church Street, Room 3-200
New York, NY 10007

**BLOCK, Senior District Judge:**

      Plaintiff Candra Winston ("Winston") brings this action against defendants City of New York, New York City Police Department ("NYPD"), Inspector Bryan ("Bryan"), Captain Michael Vanchieri ("Vanchieri"), Lieutenant Gordon Hughes ("Hughes"), and Lieutenant Nicholas Ferraro ("Ferraro") (collectively "defendants"), alleging gender discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1983, New York State Executive Law ("NYSHRL")

§ 296, and New York City Administrative Code ("NYCHRL") § 8-107.[1]

Defendants move pursuant to Rule 12(b)(6) to dismiss each of the claims in Winston's amended complaint. As part of her response, Winston requests permission to further amend and attaches a proposed second amended complaint ("SAC"). Because Federal Rule of Civil Procedure 15 requires the Court to "freely give leave" to amend, her request is granted and the motion to dismiss is considered in light of the SAC.[2] FED. R. CIV. P. 15(a)(2). Accepting as true all of the allegations in plaintiff's complaint, and drawing all inferences in her favor, *see Weixel v. Board of Educ.*, 287 F. 3d 138, 145 (2d Cir. 2002), Winston nevertheless fails to state any claim upon which relief may be granted.

**1.   Gender Discrimination**

Winston is an NYPD Detective Sergeant who has been with the department since 1992. She claims that during a 2008-2009 assignment to the "Narcotics Borough Queens," defendants discriminated against her due to her gender. In support, Winston states that superiors Hughes, Vanchieri, Bryan, Ferraro and non-defendant Anthony Kotarski ("Kotarski") repeatedly "undermined [her] authority and control . . . as the immediate supervisor of the 106 Pet Module Team." Compl. ¶ 22. These superiors granted team

---

[1]On May 19, 2010, Winston filed a discrimination charge with the Equal Opportunity Employment Commission ("EEOC"). Upon the EEOC's subsequent dismissal of the charge, Winston timely filed this action. On June 28, 2012, she filed an amended complaint. Winston's opposition states that she has withdrawn all claims alleging racial discrimination, violations of 42 U.S.C. §§ 1981 and 1985, and *Monell* liability.

[2]The SAC is largely identical to the amended complaint, with the exception of two additional instances of gender discrimination. All references in this Memorandum and Order are to the SAC.

2

members days off without Winston's permission, instructed team members to disregard her instructions, prevented her from disciplining team members, and generally withheld information necessary for Winston to properly perform her supervisory duties. Compl. ¶¶ 22-25, 29. Winston alleges that this discrimination resulted in a reduction of her overtime hours, her removal as Assistant Integrity Control Officer ("ICO"), Assistant Operations Coordinator, and Court Supervisor, and a demotion to a regular enforcement team. Compl. ¶¶ 31-32, 35.

"[T]o establish a claim of [] gender discrimination under Title VII, a claimant must show that: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). This same standard governs discrimination claims alleged under § 1983 and the NYSHRL and NYCHRL. *See Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).

Winston's allegations easily meet the first three requirements. *See Terry*, 336 F.3d at 138 ("An 'adverse employment action' . . . include[s] . . . a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (citation omitted). However, her attempts to raise an inference of discriminatory intent fall short of satisfying the requisite pleading standards. "A plaintiff alleging gender discrimination may raise an inference thereof by showing that the employer treated her less

3

favorably than similarly situated male employees." *Ramos v. Marriot Int'l*, 134 F. Supp. 2d 328, 339 (S.D.N.Y. 2001) (citing *Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977)). A plaintiff must demonstrate that she was "similarly situated in all material respects" with her male counterparts—in other words, that there exists "a reasonably close resemblance of the facts and circumstances." *Id.* (citing *Shumway v. United Parcel Serv. Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). Relevant to the inquiry is whether "[plaintiff] and those 'similarly situated' were subject to the same workplace standards . . . ." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Winston's assertions that defendants "undermined her authority" do not raise an inference of discriminatory intent. Additionally, while she alleges that she was treated differently from Ferraro and Vanchieri regarding assignments for the Puerto Rican Day Parade and in her ability to bring her children to work, such allegations are also insufficient—these individuals were Winston's superiors, and she does not allege that she was either similarly situated or subject to the same workplace standards. *See Ombu v. Children's Television Workshop*, 516 F. Supp. 1055, 1062 (S.D.N.Y. 1981) (granting summary judgment on plaintiff's discrimination claim alleging that she was similarly situated to a supervisor with different responsibilities); *Khan v. Bank of Am.*, 572 F. Supp. 2d 278, 292 (N.D.N.Y. 2008) (finding no inference of discrimination where plaintiff compared himself to non-similarly situated superiors); *Prescod v. Am. Broad. Co.*, 1985 WL 430, at *14 (S.D.N.Y. Mar. 19, 1985) ("Supervisors are not similarly situated employees").

The remainder of Winston's assertions of disparate treatment "are little more than conclusory statements of no probative value." *Shumway*, 118 F.3d at 64. Winston makes

4

vague, general allegations that other male employees were treated differently, but fails to identify any individuals or claim that they were similarly situated in all material respects. For instance, she does not provide the names of any similarly situated male employees, nor does she attempt to describe these individuals' positions and/or history with the NYPD, or supply details concerning the factual circumstances of their differing treatment. *See* Compl. ¶ 22 ("Kotarski did not treat similarly situated male supervisors in such manner"); ¶ 24 (Vanchieri did not undermine other ICOs' disciplining of team members); ¶ 25 ("[Other] detective[s] w[ere] properly disciplined . . . when a similarly situated male supervisor had a problem with [them]"); ¶ 28 (Plaintiff was the only person disciplined for providing overtime slips to an ICO assistant); ¶ 29 ("No male officers ha[d] their overtime hours reduced"); ¶ 33 ("[D]efendants tried to get special assignment pay for a male detective for his duties as ICO . . . [but] never tried to get such assignment pay for plaintiff . . . .").

Accordingly, even accepting Winston's allegations as true, they are all simply general, broad, conclusory statements, and fail to raise an inference of discriminatory intent. *See Shumway*, 118 F.3d at 64 (affirming dismissal of gender discrimination claims where plaintiff claimed that "numerous male supervisory employees violated [a no-fraternization] policy by fraternizing with female clerical employees," and that "despite this prohibition numerous male managers and supervisors violated this policy and no disciplinary action was taken against these employees."); *see also Howard v. MTA Metro-North Commuter R.R.*, 866 F. Supp. 2d 196, 208 (S.D.N.Y. 2011) (dismissing discrimination claim where plaintiff failed to adequately demonstrate that "other individuals [behaving similarly] in circumstances similar to [plaintiff's] were not subjected to termination;" stating "it is insufficient to offer little more

5

than conclusory statements or sweeping allegations . . . ." (citation omitted)).

2. **Hostile Work Environment**

"A hostile work environment claim requires a showing [] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation and internal quotations omitted); *see also Quinn v. Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (same standard governs state law claims). That is, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano*, 294 F.3d at 373. Dispositive to the inquiry, a plaintiff must demonstrate that the hostility is "discriminatory"—that is, impermissibly based upon gender. *See Alfano*, 294 F.3d at 373. Since, as discussed above, Winston fails to raise an inference of discriminatory animus, her hostile work environment claims must also fail.

3. **Retaliation**

A plaintiff claiming retaliation must demonstrate: (1) that she participated in a protected activity known to defendants; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006); *see also Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011) (same standard under the NYSHRL and NYCHRL). "[A] plaintiff can indirectly

6

establish a causal connection to support a [] retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski v. JetBlue Airways, Corp.*, 596 F.3d 93, 110-11 (2d Cir. 2010). "Though [the Second Circuit] has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, [it has] previously held that five months is not too long to find the causal relationship." *Id.* at 110. In other circumstances, three months may be too long. *See Hollander v. Am. Cyanamid Co.*, 895 F.3d 80, 85-86 (2d Cir. 1990) (affirming grant of summary judgment due to lack of causal nexus between protected activity and adverse action).

Winston's retaliation allegations fail to satisfy her Rule 12(b)(6) burden. She alleges that "shortly []after . . . processing an [internal Office of Equal Employment Opportunity] OEEO complaint for a female cleaner in the building," Winston went on vacation, and upon her return "she was removed from her Assistant ICO position." Compl. ¶ 27. This conclusory allegation is "too vague in nature and non-specific as to time . . . to serve as a basis" for her retaliation claims. *See Chandler v. AMR Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1185 (E.D.N.Y. 2003) (dismissing claim on this basis); *see also Freeman v. Dep't Envtl. Prot.*, 2013 WL 817221, at *9 n.11 (E.D.N.Y. Feb. 5, 2013) (same). Despite having had three opportunities to do so, Winston's latest complaint does not indicate when either the OEEO filing or her removal as Assistant ICO occurred. Her blanket statement that the demotion took place "upon return from [a] vacation . . . [taken] . . . shortly []after [the protected activity]" is insufficient to satisfy *Iqbal's* standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual

7

matter . . . . [A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.") (citation and internal quotations omitted).

## CONCLUSION

For the above reasons, the Court grants defendants' motion to dismiss.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 23, 2013